## Benjamin H. Jamison, by his Father and Next Friend, Jacob A. Jamison, *v.* Vallie Hawkins and John A. Hawkins, Appellants.

*Charge of court—Evidence.*

There is no reversible error in a case where the trial court in its charge recites the testimony for the plaintiff more fully than for the defendants, if the substance of the testimony for both parties is stated impartially and where, if errors were committed in the admission or rejection of the testimony, the appellants profited by them.

Argued March 20, 1900. Appeal, No. 28, March T., 1900, by defendants, from judgment of C. P. York Co., April T., 1899, No. 27, in favor of plaintiff. Before RICE, P. J. BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by BEAVER, J.

Trespass charging defendants with negligent malpractice as surgeons in setting broken leg of plaintiff by reason of which alleged negligence mortification ensued and amputation became necessary.

The court charged the jury in part as follows:

[Dr. Vallie Hawkins and Dr. John A. Hawkins both deny that the bandages were wrapped tight; and they point to the fact, with a view of corroborating their statement, that there was no marked degree of pain or swelling. And on that subject I say you must take into consideration the testimony of these experts, all of whom said that in case of tight bandaging, or the bandage becoming too tight by swelling, there would be unusual pain, considerable pain. And Dr. Hayward, as an expert of the plaintiff, said there would be excruciating pain, or very great pain.

Now the defendants contend that the absence of that pain demonstrates the absence of tight bandaging. That is their position. The plaintiff's witnesses testified that the bandages were tight. You will recollect the testimony on this subject, and consider it very carefully, because the value of the expert testimony depends largely on whether there was much or little pain and swelling ; and you will have to find whether there was or was not, before you can give full consideration to the expert testimony.

As I have said, the plaintiff contends that this tight bandaging, or not loosening the bandages when then became tight, caused the stoppage of the circulation, and hence the gangrene. They point to the swelling, to the cold feet, to the blisters which appeared on the exposed part of the foot, to the discoloration, and they say that Dr. Vallie Hawkins did not test the circulation as he should have done ; that he did not open the bandages when these things appeared ; that it was his duty to do so, and that ordinary care, skill and diligence required him to do so ; and that in consequence this boy lost his leg. If you find these to be the facts by a preponderance of the evidence, your verdict should be in favor of the plaintiff.] [20]

Verdict and judgment for plaintiff for $1,000. Defendants appealed.

*Error assigned* among others were (1) in refusing binding instructions for defendant. Errors were also assigned to the rulings on evidence, to the charge of the court as inadequate, in giving undue prominence to the testimony of the plaintiff. (20) To portion of the judge's charge reciting same. (21) In submitting to the jury the question whether or not Dr. John A. Hawkins was employed by Jacob A. Jamison.

*Jere S. Black*, with him *Chas. A. Hawkins*, for appellants.

*James St. Clair McCall*, with him *Samuel K. McCall*, for appellee.

OPINION BY BEAVER, J., April 23, 1900:

The defendants were summoned to answer in trespass for

lack of care and skill in surgically treating the fractured leg of plaintiff's son aged about nine years. Four questions of fact were raised by the testimony: first, was Dr. John A. Hawkins, one of the defendants, employed by the plaintiff in his professional capacity to assist in the care and treatment of the injured leg? Second, did the defendants use proper care and skill in the treatment of the case, and growing out of this, third, did their treatment cause unnecessary pain, and fourth, was such treatment the cause of the gangrene which rendered the amputation of the injured leg necessary? These questions were all fairly raised by the plaintiff's statement. As to all of them there was conflicting testimony. All were, in our opinion, necessarily submitted to the jury and, in saying this, we, of course, dispose of the appellant's first assignment of error, in which the answer of the court to the defendants' single point, "Under all the evidence in this case, the verdict must be for the defendants," which was answered, "This point is not affirmed; the questions of fact are for the jury" is assigned as error.

Assignments two to six inclusive complain of the action of the court in admitting testimony under certain offers which were objected to by the defendants. These all relate to conversations or declarations of one or the other of the defendants in regard to the treatment of the patient, and especially as to tight bandaging, which was a vital question in the case, made in the presence of the mother, the father or a third physician who was called in consultation before the amputation. The fourth relates to the circumstances attending the call to Dr. J. A. Hawkins to assist in the operation. The witnesses were entirely competent and the testimony was relevant and material to the issue. It is difficult to see how a suspicion as to their admissibility can be raised as to any of them.

Assignments seven to eleven inclusive relate to the refusal of the court to disallow or strike out certain hypothetical questions proposed by the plaintiff and answered by the experts to whom they were addressed. Two of the questions were addressed to the one expert witness who saw the patient before the amputation. The principal objection to these offers was that the facts contained in the hypothetical questions proposed were not in accordance with the facts as they were in evidence in

the case.   Reading them in the light of the testimony, we can
see no serious departure from the facts as they were given in
evidence up to the time when the questions were asked. .  The
defendants, of course, had the right of cross-examination and
could give their version of the facts in such cross-examination,
so as to fully draw from the witness his expert knowledge based
upon the facts, as they interpreted them.   Any serious depart-
ure from the facts given in evidence by the party asking a hy-
pothetical question will, of course, be corrected by the court,
before the question is allowed to be put.   This was done in a
discriminating way by the court in several instances and the
questions molded to meet such suggestions.   As finally put, we
can find no error in their composition.   They were, therefore,
properly allowed and the refusal to strike out the answers, after
they were made, was not error.

Assignments of error from twelve to fifteen inclusive con-
tain general complaints as to the manner in which the testi-
mony on the one side and the other was presented by the court
to the jury.   The case occupied several days in its trial and
the court, in order to recall the facts to the mind of the jury,
read largely either from notes taken by the trial judge at the
time the testimony was given by the witnesses or from stenog-
rapher's notes.   The substance of the testimony for both
plaintiff and defendants was fully and impartially stated, the
charge covering nearly forty pages of the printed paper-book.
There was no bias, so far as we can see, in the presentation of
the testimony of either side.   That of the plaintiff was perhaps
a little more fully stated, because the facts relating to the case
were therein detailed at greater length for the reason that the
burden of making out a case rested upon the plaintiff, but the
testimony of Dr. Vallie Hawkins was read almost entire, cover-
ing five pages of the charge as printed, no material points of
his testimony being omitted.   The hypothetical questions of
the defendants were read and the answers of their experts
fairly stated.   The several issues were clearly stated and the
facts bearing upon each of them recalled for the information
of the jury.

The sixteenth assignment relates to the rehearsal of the tes-
timony by the plaintiff in relation to the employment of one of
the defendants.   So far as we can discover, there was no sub-

stantial difference between the testimony of the witness and the rehearsing of it by the court to the jury. This assignment is not insisted upon and need not be seriously regarded.

The seventeenth to the twentieth assignments inclusive relate to the remarks of the court in regard to the bandaging of the broken leg. The remarks of the court in this behalf were, on the whole, favorable to the defendants. The trial judge cautioned the jury in regard to the consideration of that portion of the testimony of Dr. Hayward which bore against the defendants. There is no misstatement of the testimony of any witness and the portion of the charge complained of in the twentieth assignment of error is especially fair in stating the contention of both the plaintiffs and defendants, special emphasis being given to the theory of the defendants.

The twenty-first assignment relates to the submission by the court to the jury of the question whether or not Dr. John A. Hawkins was employed by the plaintiff. There can be no doubt that, upon the testimony of the plaintiff, Dr. John A. Hawkins would have been entitled to recover against him for the services rendered in the care and treatment of the lad's broken limb. The question of the employment depended solely upon the testimony of the plaintiff and the elder Dr. Hawkins, save the testimony complained of in the fourth assignment relating to the request of Dr. Vallie Hawkins to have his father called to assist in the operation of setting the broken leg, and the fact of such employment, therefore, rested upon the credence given by the jury to their several statements. As already intimated, the court could not take this question from the jury. It was fairly submitted to them and their finding thereon is conclusive.

The assignments of error are, therefore, all overruled.

It may be said in regard to this case in general that it is somewhat remarkable that none of the surgeons who attended at the amputation seemed to pay much attention to the amputated leg to ascertain what was the cause of the gangrene which necessitated the amputation. Dr. Hayward seems to be the only one who paid any attention thereto and he testifies distinctly that he examined the artery, after the leg was taken off. It is hardly surprising that the jury reached their conclusion in determining the value of the testimony of the experts called, when on the one side was the unqualified opinion of an intelli-

.gent and apparently disinterested witness who had seen the patient several times before the operation and who was present at the time, and on the other the opinions of those who based them upon hypothetical questions in which the facts stated were those concerning which the jury had heard the testimony, and as to the fairness of which they were able to form an opinion of their own.

There is practically no dispute as to the law of this case. All the questions involved in the numerous assignments of error are simply those likely to arise in the course of a trial in which the court passes promptly upon an offer of testimony and makes a ruling. The case was carefully tried throughout. The defendants had no reason to complain of the court in any respect in the course of the trial or in the charge to the jury. If errors were committed in the admission or rejection of testimony, they profited by them. Their rights were carefully guarded and we cannot see that they suffered wrong.

The judgment is, therefore, affirmed.